IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO: 5:11-CV-692-FL

| | |
|---|---|
| SETH D. HARRIS, Acting Secretary of Labor, United States Department of Labor, [formerly HILDA L. SOLIS, Secretary of Labor, United States Department of Labor],<br><br>Plaintiff,<br><br>v.<br><br>JEFFREYS SEED COMPANY,<br>JEFFREYS SEED COMPANY PROFIT SHARING PLAN AND TRUST,<br>JEFFREYS SEED COMPANY GROUP HEALTH PLAN,<br>EDWARD TAYLOR JEFFREYS,<br>and JAMES T. JEFFREYS, III<br><br>Defendants. | ORDER |

This matter comes before the court on plaintiff's motion for reconsideration (DE 36), to which defendants have responded and plaintiff replied. For the reasons below, plaintiff's motion is denied.

BACKGROUND

Plaintiff brought complaint December 2, 2011, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., to enjoin practices allegedly in violation of ERISA, and to obtain relief for alleged breaches of fiduciary duty under ERISA. On February 8, 2013, order was entered dismissing with prejudice this case for failure to prosecute, which order the

court is requested now to reconsider.

The court revisits here the procedural history. Complaint was filed on behalf of the Secretary of Labor, through the Office of the Solicitor, United States Department of Labor, in Atlanta, Georgia, executed by attorney Kristina T. Harrell. Three days later, the clerk issued two deficiency notices, one signaling failure to file a civil cover sheet and the other plaintiff's counsel's failure to file a notice of appearance. These deficiencies were corrected. Notice of appearance filed December 5, 2011, referred to Ms. Harrell appearing as counsel for plaintiff, and provided her e-mail address.

Counsel refiled on the same day the complaint with attached summonses which the clerk issued December 5, 2011. As evidenced March 30, 2012, all defendants appeared to waive service. However, counsel was noticed by the clerk that the waivers were illegible, and directed to refile them. Counsel did so about a week later, on April 10, 2012.

On May 7, 2012, joint motion for time extension was filed by plaintiff, which made reference to intent of the parties to resolve the issues in dispute, and finalize a consent judgment on or before June 6, 2012. Again, counsel for plaintiff was noticed of deficiency in filing, where she failed this time to comply with the court's local rules requiring submission of a proposed order. This deficiency was corrected. However, on May 8, 2012, another notice of deficiency issued, where counsel for plaintiff had not complied with the rule of civil procedure requiring a certificate of service showing the proposed order was delivered to the opposition.

On the afternoon of June 6, 2012, the deadline for filing, successive motion for time extension was filed on behalf of the parties by plaintiff, referring to one remaining provision to be finalized. Request was made for another thirty-day time extension. The court's quality control clerk, having noticed a number of times issues appearing, telephoned June 7, 2012, the Office of the

Solicitor and spoke to a woman identified as Cherlyn, secretary for Ms. Harrell. This individual was told that all documents filed should contain the correct reference to the controlling division of the court, in this instance, the Western Division, in the case caption. Also, the clerk instructed that proposed orders could be filed more efficiently, and gave directions. As memorialized in order, request for time extension was allowed.

Deadline for answer of July 5, 2012, came and went. None having been filed, on July 16, 2012, the clerk of court noticed plaintiff to proceed in accordance with Rule 55 of the Federal Rules of Civil Procedure to reduce the matter to judgment. Notice also provided "[i]f no steps are taken within twenty-one (21) days of receipt of this notice, the court will require you to show cause why this action should not be dismissed as to all defendants for failure to prosecute."

More than twenty-one (21) days elapsed with no steps being taken by plaintiff. On August 13, 2012, the court entered show cause order noticing the failure of plaintiff to comply with the clerk's directive. The court instructed the clerk to remove the case from the active docket. This was tempered with a grant of permission for plaintiff to make motion to reopen the case within twenty-one (21) days and show cause why the action should not be dismissed. Plaintiff's failure to make motion and show cause would, the court ordered, result in the action being dismissed then, without prejudice.

On August 31, 2012, plaintiff made the motion, lodging good cause in counsel's miscalculation of the deadline, and promoting need for the action to be maintained. Counsel acknowledged that she received the clerk's notice of July 16, 2012, giving her twenty-one (21) days to reduce the matter. She referred to misplacement of a "reminder" on her calendar for September 6, 2012. The stated deadline of twenty-one (21) days fell on August 6, 2012, which date she meant

3

to note on her calendar. Another deficiency notice was issued by the clerk concerning failure to adhere to the requirement in the local rules to file a proposed order.

Hearing no response in opposition, the court allowed the motion in order dated October 2, 2012. While the court accepted the cause offered, a single "reminder" on the last day to take action strikes the court not as a reminder to do something but as a notice of the deadline for action. Even had it been correctly noted August 6, 2012, such a "reminder" would have left counsel with very little opportunity to effectuate the action ordered to be done by that date.

Motion for entry of default followed October 3, 2012. On October 5, 2012, the quality control clerk again called the Office of the Solicitor. Notes relate that she spoke this time directly to the attorney, regarding her failure again to designate the division in the caption on the face of the motion. She referred Ms. Harrell to the controlling local rule for her future reference.

Entry of default was made as to each defendant November 8, 2012. On December 10, 2012, the clerk issued formal notice similar to that filing which had issued months earlier, now directing plaintiff to proceed after entry of default. Again, plaintiff was noticed that "[i]f no steps are taken within twenty-one (21) day of receipt of this notice, the court will require you to show cause why this action should not be dismissed as to the defendants for failure to prosecute." Again, plaintiff's deadline came and went, with no action being taken.

On January 15, 2013, notice of show cause hearing was given, setting hearing at New Bern February 8, 2013, to provide opportunity for plaintiff to show cause why the case should not be dismissed for failure to prosecute. Plaintiff failed to show at hearing. The court confirmed at hearing with the clerk proper notice had issued to Ms. Harrell. Defendant James T. Jeffreys, III, did show at hearing. He offered into the record a series of e-mail transmittals, exchanged between Henry

Smith, an attorney acting on defendants' behalf in negotiations, and counsel for plaintiff, Ms. Harrell.

The first three transmittals concluded with acknowledgment on behalf of defendants, through their attorney representative in settlement discussions, of Ms. Harrell's statement December 7, 2012, that she "should be able to modify the draft Consent Judgment I already have prepared and e-mail it to you today." Notably, three days elapsed from the making of that statement until the court's second notice issued by the clerk concerning the government's delay in reducing the matter to judgment was dispatched electronically. Another e-mail transmittal tendered at hearing reflects effort of defendants' attorney in these discussions to prompt Ms. Harrell, in e-mail transmittal dated December 17, 2012, that he was "still waiting for the modified Consent Judgment." As shown, Mr. Smith received an electronic return message pre-programmed to bounce-back to the e-mail sender immediately providing information that the recipient, Ms. Harrell, was out of the office and would return January 3, 2013.

Twelve (12) days after her stated return to the office, on January 15, 2013, notice of the court's hearing was given. Seven days after that and some nineteen (19) days after Ms. Harrell's return to work, documentation tendered to the court at hearing shows that Mr. Smith persisted on behalf of defendants in his efforts to obtain the modified Consent Judgment promised December 7, 2012, by Ms. Harrell. In this sixth and final e-mail transmittal tendered to the court, dated January 22, 2013, Mr. Smith wrote "I have called a couple of times and left messages and I think I sent you another e-mail. This is just to remind you that I have never received the modified draft agreement . . . ." The court's order issued February 8, 2013, and as with all the other orders and notices, it was served on plaintiff, through Ms. Harrell, by delivery electronically to the e-mail address this attorney provided.

5

Since dismissal of this case, plaintiff alleges that much of the inattention and neglect on the part of plaintiff's counsel, Ms. Harrell, was due to the routing of some e-mail notifications to her junk e-mail folder, and that a separate e-mail address was not programmed by the government into the court's electronic case management and case filing system ("CM/ECF") to receive notices which should have alerted the docket clerk. Plaintiff learned on February 15, 2013, of the court's order dismissing the case, and filed the instant motion for reconsideration on April 19, 2013, sixty-three (63) days later.

In two instances, the attorney here has failed again to comply with local rules. There still is no reference to the division in which the case was filed in the caption. At least two telephone calls are noted by the clerk as having been made to the Office of the Solicitor last year to cause the attorney to pay attention to the local rule requiring this information. Also, in this instance there is no accompanying supporting memorandum. Need for a concise motion and argument separately to be contained in accompanying memorandum, is another requirement memorialized in the court's local rules and well-entrenched in motions practice. The attorney should not have saddled argument which is made in a memorandum, onto the face of the motion. Ms. Harrell was noticed again in this instance that no proposed order was submitted. The court notes these compliance issues because of the pattern and practice established here, but sets aside the particular deficiencies in the most recent filing to focus squarely on the merits of the motion.

## COURT'S DISCUSSION

Rule 60 provides authority for the court to relieve a party from final judgment or order upon finding "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The law in the Fourth Circuit is clear that ignorance, carelessness, or lack of diligence on the part of an attorney does not rise to the level of mistake or excusable neglect that shall be provided relief

6

pursuant to Rule 60(b)(1). Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 413 (4th Cir. 2010) (affirming the district court's denial of a motion for relief from judgment). The court in Robinson recognized that an important responsibility that all attorneys filing electronically have is to "access[] the court's docket to monitor case activity." Id. Therefore, failure to receive e-mail notices does not absolve counsel of this "affirmative duty" to monitor her cases before this court. See id.

Plaintiff argues that counsel was unaware, unlike in Robinson, of any difficulties receiving notices electronically until after the court's February 8, 2013, order dismissing the case was entered. Accordingly, plaintiff argues that counsel had no reason actively to monitor the court docket. This is not supported by the record, however.

Plaintiff promotes that part of internal policy is to add a second e-mail address for noticing, which functions as the primary intake for case information, to be monitored by a docket clerk, and that notices to counsel are the back-up or secondary method employed.[1] Reference is made to the usefulness of the docket clerk also in calendaring actions.

On July 16, 2012, the clerk of court noticed plaintiff to proceed in accordance with Rule 55 of the Federal Rules of Civil Procedure or show cause why the action should not be dismissed for failure to prosecute. Plaintiff did not take any steps and the case was closed on August 13, 2012, with permission to reopen within twenty-one (21) days of that entry. On August 31, 2012, plaintiff moved to reopen the case, as noted, based on her failure properly to calendar the deadline for the making of a response. Not before, and not at that time, did plaintiff add the docket clerk's e-mail address.

Where counsel sought dispensation for her failure to act based on her erroneous calendaring

---

[1] According to the court's records of electronic docket activity, this second e-mail was not added to this case for noticing until the instant motion was filed.

7

of the deadline, she was patently aware that processes in place were not advancing her client's interests. Counsel should have been aware by that time that her level of diligence was not sufficient also in light of the repeated notices given by the clerk underscoring necessity to adhere to the court's local rules.

After the court reopened the case, having waited until the deadline for response elapsed, with no response being made, the court allowed that motion. Apparently, counsel instructed her paralegal to call the clerk of court around that time, to inquire as to the case status. On October 3, 2012, plaintiff moved for entry of default as to all defendants, and, as noted, a few days later the quality control clerk telephoned the attorney regarding her repeated failure to comply with Rule 10.1(b), Local Civil Rules.

Plaintiff's counsel states she did not receive any electronic notices from the court after October 30, 2012, on which date a notice was received alerting her that the motion then pending was being referred in the regular course to the clerk of court for decision. By that time, this was a case which the court had closed previously due to dilatory actions, and then reopened. That counsel did not make any efforts later to contact the clerk of court to confirm status of the motion referred, or verify inclusion of the docket clerk's e-mail address, is stunning. Counsel checked through her paralegal October 3, 2012, concerning status of the motion to reopen the case, but not again. And she did nothing by her own admission as the year concluded to advance any settlement until prompted, where she writes "[n]ot having heard from Defendant Taylor Jeffreys for several months regarding the Secretary's pending settlement offer on the outstanding issue with respect [to] a consent judgment, Ms. Harrell received a phone message from an attorney named Henry Smith on Wednesday, December 5, 2012." Mot. 9.

She returned the call but not even this dialogue prompted her to assess the status of the

8

motion for entry of default, which by then would have been pending some five weeks by Ms. Harrell's count. The court has laid out Mr. Smith's efforts later to prompt Ms. Harrell to act finally on her statement December 7, 2012, that she "should be able to modify the draft Consent Judgment I already have prepared and e-mail it to you today." Three days later, on December 10, 2012, the clerk of court's notice directing plaintiff to proceed issued. The attorney wrote in e-mail transmittal dated December 17, 2012, that he was "still waiting for the modified Consent Judgment." Ms. Harrell was then out of the office, to return January 3, 2013. Twelve (12) days after her stated return to the office, on January 15, 2013, notice of the court's hearing was given.

Seven days after that and some nineteen (19) days after Ms. Harrell's return to work, documentation tendered to the court at hearing shows that Mr. Smith persisted on behalf of defendants in his efforts to obtain the modified Consent Judgment promised December 7, 2012, by Ms. Harrell. On January 22, 2013, Mr. Smith writes "I have called a couple of times and left messages and I think I sent you another e-mail. This is just to remind you that I have never received the modified draft agreement . . . ." Counsel for plaintiff argues that she intended to respond but the press of other work and her lack of awareness of court proceedings caused her failure so to do.

The court finds that this case, much like in Robinson, afforded counsel ample opportunity to be on notice that whatever internal procedures were in use, they were failing to promote plaintiff's counsel to obey court orders. See Robinson, 599 F.3d at 408 n.7 (recognizing that while counsel does not always have a duty to actively monitor the docket, circumstances existed which required counsel to "pay attention" in that case).[2]

The court has reviewed the briefs and affidavits submitted by the parties, and also, as noted,

---

[2] See also Gibson-Michaels v. Bair, 255 F.R.D. 306, 307 (D.D.C. 2009) (finding that problems receiving electronic notices are not grounds for excusable neglect).

9

its own internal records of docket activity and electronic notification. In addition to the written statements concerning telephonic contacts with the Office of the Solicitor, the court's electronic records are revealing. There is nothing to show the notices sent after October 30, 2012, like those sent before, were not appropriately directed. There is no reason that plaintiff's counsel could not have monitored the docket in this case of her own initiative where activity is listed in detail and accessible to the public. At least once she caused a telephone call to be made to the clerk of court to inquire into status of a motion. She knew October 30, 2012, the clerk of court had received for ruling motion for entry of default she had caused to be made. She did not pay attention beyond that to the progress of the reopened case. The record also cuts firmly against diligence in negotiation during this period.

Whether counsel decided entirely to rely on the office's clerk who maintains the ATL.FEDCOURT@dol.gov e-mail address as per described protocols during what she indicates was a busy time for her, for notifications, is not clear. If she did not review the court's e-mail transmittals after October 30, 2012, sent to her directly, something was done on the user side to delete unread e-mail notices sent by the court and/or reroute them unread to counsel's junk e-mail folder.

Counsel no doubt was relieved of concern that the case would be dismissed last October when she learned the case was reopened. Motion for entry of default then followed. She had knowledge at the end of October 2012, that her client's motion for entry of default had been referred to the clerk of court – the same authority who earlier had noticed this attorney of her failure to prosecute the case and alerted to potential punitive consequences. The fact no further contact was initiated by or on behalf of counsel with the court or its clerk concerning the case status in the four month period after October 30, 2012, until she became aware of the court's dismissal order, is part

10

of a demonstrated pattern and practice of inattentiveness.[3]

Upon learning over four months later that plaintiff's case had been dismissed with prejudice, it is also confounding that counsel waited until the sixty-third day to file the instant motion. Plaintiff asserts that time was spent investigating internal procedures; however, on the face of its filings, the extensive time taken appears to have been focused on developing a heightened practice for minding attorneys by developing of a system of checks to confirm notifications now are being sent to at least three individuals in all cases. Where the discrete issues in this case immediately became apparent to counsel February 15, 2013, it is difficult to discern a reason for delay grounded in need to develop protocols to ensure the mistakes here do not happen again in other cases. See Thomas v. Cumberland Cnty. Sch., No. 5:09-cv-359, 2011 WL 10045248 at *2-3 (E.D.N.C. 2011) (recognizing that one requirement for relief from a final judgment is to show that the party's motion is "timely made" or else that there is a "valid reason" for delay).

Plaintiff in this case is the Secretary of Labor, with responsibility to assist the people in matters of retirement and health plans, including former employees of defendants. The court recognizes the serious loss that can result from careless case management. However, the lack of diligence on the part of plaintiff's counsel, though regrettable, is not excusable. See Robinson, 599 F.3d at 413 ("A party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect pursuant to Rule 60(b)(1).").

The court's parsing of the docket highlights repeated issues with filings which suggests an

---

[3] So many things could have been done differently by the Office of the Solicitor separate and apart from changed internal operating procedures, on which this court offers no comment. For example, the Secretary's counsel could have asked the court for a stay of the case during settlement negotiations, sought Rule 16 conference to alert as to progress issues, or taken initiative to file with the court a motion to enlarge deadlines. If the attorney had exhibited some attention and thought where a default motion seemingly was pending for an excessive time in the hands of the clerk of court who she knew earlier had noticed plaintiff's delay, surely plaintiff's counsel would have looked at the public docket or picked up the telephone and made another call to a clerk, like the one made October 2, 2012, to check on case status.

11

almost determined inattention to the litigation from the very beginning. Considerable efforts were undertaken by the clerk of court to bring the attorney into conformity. Counsel should have known for many reasons that her processes were not effective. The weight of plaintiff's inattention presses hard against Rule 1 of the Federal Rules of Civil Procedure which mandates that the court construe and administer the rules to secure the just, speedy, and inexpensive determination of this and every other action.

The loss to all the people, especially when deficient performance is on the part of an attorney charged to advance justice for the people, is especially grievous. However, there is no basis under law for this court to relieve plaintiff for inexcusable neglect.

Plaintiff at bottom decries what it deems defendants ignore – the extent of the interests the plaintiff represents. It is plaintiff who has lost sight in this case of that factor. For this, the court expresses its profound regret and dismay,

## CONCLUSION

For the reasons above and in the court's February 8, 2013, order, where there is no cause to reconsider order dismissing with prejudice plaintiff's complaint, plaintiff's motion for reconsideration is DENIED (DE 36). A copy of this order also shall be served for informational purposes on the U.S. Attorney for the Eastern District of North Carolina.

SO ORDERED, this the 5th day of June, 2013.

LOUISE W. FLANAGAN
United States District Judge